UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>IBRAHIM AL-AMREEKI<br>a/k/a Brandon Knight | No. 21 CR 418<br><br>Judge Robert W. Gettleman |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby submits its position paper on sentencing. For the reasons outlined below, the government respectfully requests that the Court impose a sentence at the high end of the applicable Guidelines range of 37 to 46 months' imprisonment and a three-year term of supervised release.

**I.  BACKGROUND**

On August 21, 2021, a superseding indictment was returned by the grand jury which charged the defendant with two counts of knowingly transmitting in interstate commerce a communication containing a threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c).

On April 6, 2022, the defendant pled guilty to Count One of the indictment. Sentencing is currently scheduled for July 8, 2022.

## II. FACTUAL BACKGROUND

On or about May 14, 2021, an FBI Online Covert Employee ("OCE") friended the Facebook account "Ibrahim Al-Amreeki," which was operated by the defendant, because of online postings of an extremist nature.

Thereafter, the OCE and the defendant engaged in online communications via Facebook Messenger. On or about May 19, 2021, the OCE received a video from the defendant during which the defendant stated he was on a freight train headed to Oregon with his common-law wife.[1]

On or about June 11, 2021, at approximately 07:50 AM, the Eugene, Oregon Police Department responded to a homeless encampment to investigate a report of a dispute. Upon arrival, the defendant's wife and "AV2"[2] told the officer that the defendant grabbed an axe and swung it around while saying he was going to kill his wife and AV2, and "chop them into little pieces."

Later that same day, police officers arrived back at the encampment in response to a second incident involving the defendant. The officers were told by AV2 that the defendant swiped at her tent with a knife but did not damage it. The defendant's wife told the officers that the defendant "came at" her and AV2 earlier with an axe and she was scared of him. The officer interviewed another witness to the incident who said that the defendant was there with a knife prior to the police arrival.

---

[1] The defendant and his wife were not legally married but for purposes of the sentencing, the government will refer to her as his wife.

[2] "AV2" or Adult Victim 2, is how this person is referred to in the criminal complaint.

Later that same afternoon, the defendant told the OCE that "An individual needs to die," and that he was "fully armed and ready to go to battle." The defendant then told the OCE that his "plan is to kill my wife." The June 11 threat to kill his wife is the basis for Count One of the indictment.

Later that day, after his communications with the OCE, the defendant was arrested by Eugene police officers on a warrant out of Arizona but, a few days later, was subsequently released from custody when it was determined that the warrant was not extraditable. The defendant believed his arrest was effectuated by the FBI. On June 17, 2021, the day after his release from custody, he told the OCE that he had been arrested and that the "the FBI was tracking" his location. He then issued a "declaration of war" because he was charged "as a fugitive from Justice." He told the OCE that he "declare[d] war on the United States government" and will "hunt down any person working for the FBI." He further stated that he was "on a mission to hunt down and execute individuals who work on behalf of the FBI." He also threatened to "cut their heads off."

### III. THE GUIDELINES CALCULATION IN THE PSR IS CORRECT

The government agrees with the Guidelines calculation in the PSR. The base offense level is twelve, pursuant to Guideline § 2A6.1(a)(1). PSR ¶ 22.

The government agrees with the PSR that the base offense level is increased by six levels, pursuant to Guideline § 2A6.1(b)(1), because there is conduct evidencing an intent to carry out the threat. PSR ¶¶ 24 - 26. Application note 1 states that the Court can consider conduct prior to the offense, that is substantially and directly connected to the offense, in determining whether to apply this enhancement. "In

3

assessing whether a defendant intended to carry out a threat, courts have looked not only to the 'overt activity' surrounding the threat, but even to the nature of the threats themselves." *United States v. Sullivan*, 75 F.3d 297, 302 (7th Cir. 1996).

The defendant is a man of action, not just words, and as such, there was no ambiguity in his intent to carry out his threat to kill his wife. A mere few hours before the defendant issued the charged threat, he attacked his wife with a small axe while threatening to kill her and another individual, emphasizing his intent by saying he would chop them into little pieces. The fact that he used a deadly weapon to attack his wife is strong evidence of his intent to carry out his later threat to kill her. *United States v. Carter*, 111 F.3d 509, 514 (7th Cir. 1997) ("The fact that Carter actually owned and carried firearms shows an easy ability to carry out his threatened violence, making his threats more than mere puffery."). The defendant's actions evidencing his intent to carry out his threat warrant the application of this six-level enhancement.

The defendant's offense level should be increased by an additional two points, pursuant to Guideline § 2A6.1(b)(2)(A), for making more than two threats. PSR ¶ 27. Specifically, and in addition to the threats already addressed, on or about June 27, 2021, the defendant texted his wife that he will "waterboard you in your sleep." When she texted him that she was leaving him and that they "were done," he replied that "because ur a whore. I'm going to beat you to death. Because ur a rat. And a whore." He told her that his phone was being shut off, she told him to shut it off and to "leave me alone." He responded that it [the phone] would be smashed to pieces, "just like ur face. U filthy whore."

4

Even if the June 27th text messages can be considered one continuance threat (*see United States v. Haas*, 20-3269 (7th Cir. June 21, 2022) ("If a defendant sends six threatening texts in quick succession, may or must each text be charged as a separate count, or should all six texts be treated as a single, ongoing threat? Context will govern the answer to that question." 20-3269 *9) the defendant still issued at least three separate and distinct threats to kill his wife – the June 11th threat when he attacked her with an axe while simultaneously saying he was going to kill her and chop her into pieces; the June 11th threat he communicated to the OCE that he was going to kill his wife; and the June 27th threats when he said he was going to waterboard her, beat her to death and smash her face – in addition to the threat to kill FBI personnel because he believed FBI caused him to be arrested. In total, the defendant committed at least four threats that "substantially and directly" relate to the offense.

With respect to defendant's criminal history points, the plea agreement contemplated six criminal history points for a criminal history category of III. The PSR identified a prior conviction that the government was unaware of (PSR ¶ 49 – 1 point) and a conviction which incurred a custodial sentence which the government believed was only a probationary sentencing (PSR ¶ 51 – 1 additional point). The government agrees with Probation's analysis of eight criminal history points and criminal history category of IV.

With a total offense level of 17 and a criminal history category of IV, the advisory Guidelines range is 37 to 46 months' imprisonment.

## IV. THE FACTORS SET FORTH IN 18 U.S.C. § 3553(A) WARRANT A SENTENCE WITHIN THE HIGH END OF THE GUIDELINES RANGE

As part of the sentencing process, the Court is to consider the factors set forth in 18 U.S.C. § 3553(a) and impose a sentence that is sufficient, but not more than necessary, to achieve the goals of sentencing. In particular, Section 3553(a) requires the Court to consider, among other factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) to afford adequate deterrence; (5) to protect the public from further crimes of the defendant; and (6) to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.

The nature and circumstances of defendant's crime, coupled with the defendant's history and characteristics, to include a history of violence towards his wife and others, warrant a prison sentence at the high end of the Guidelines range.

The defendant's threat to kill his wife was the cumulation of a history of verbal threats and physical abuse against her and others. In addition to the threats discussed above, she testified that he was "verbally and physically abusive. He threatened to hurt and kill me, my son, and my family. Sometimes he threatened me in person. Sometimes he sent me text messages with threats." She stated, consistent with the threats made during the June 11 axe attack, that he had previously said "he would chop my body up and send it to my family."

The defendant threatened to kill not only his wife but also her son, stating that when her son became "old enough," he would put "a hit" on her son and that he would make a homemade bomb and send it to her son.

The defendant was not just verbally abusive towards her but also physically abusive. For example, she stated that when they were in Alaska, the defendant was arrested for choking her (PSR ¶ 51). Another time in Fairbanks, Alaska the defendant hit her with a necklace which left a scar on her head.

His wife stated that while in Flagstaff, Arizona, the defendant kicked her from behind which broke her back in two places and which has continued to cause her pain.

She stated that, on another occasion, the defendant picked her up while she was sleeping and threw her across the tent where they lived in Eugene, Oregon. As a result, she hurt her knee but the defendant prevented her from getting the recommended medical examination.

The defendant did not limit his conduct towards his wife. He has also hit a prior girlfriend (PSR ¶ 48), threatened to kill others while waiving a knife (PSR ¶ 48), has made a bomb threat (PSR ¶ 49); and has violently resisted arrest (PSR ¶ 50).

The defendant has a history of belligerence towards law enforcement and the sentence should promote respect for the law. In addition to threatening to kill FBI personnel, the defendant threatened to kill officers in Arizona. On or about December 4, 2020, in response to a report of a domestic violence assault in progress, University of Arizona Police Department (UAPD) officers arrested the defendant in Tucson, Arizona, on multiple charges including domestic violence assault and aggravated

7

assault on a Peace Officer. A bystander witnessed the defendant beating and kicking his wife, who was on the ground. When the bystander intervened, the defendant pulled out a knife, but put it away when he realized the bystander was not a police officer. Officers arrived and when they attempted to place the defendant under arrest, the defendant forcibly resisted, spit at the officers and stated that he could be COVID positive. While being transported from the scene to the jail, the defendant made verbal threats to law enforcement, stating he would wait for the officers to be off duty to kill them and that he would come to UAPD to retrieve his property and "do something." The defendant further stated he got pleasure from hearing about police officers being murdered around the country and would wait for them to be off duty, without their guns to kill them (PSR ¶ 58).

The § 3553a factors warrant a prison sentence at the high end of the Guidelines range. The seriousness of the offense, and the defendant's history and characteristics, to include a history of violence towards his wife and others, demonstrate that he is a danger to the community. His criminal history for offenses of a similar nature, where he served minimal periods of incarceration, demonstrate that he is a recidivist who requires a sentence that will have a specific deterrent effect. His threats towards the FBI and earlier threats towards law enforcement officers demonstrate a need to instill respect for the law. Finally, his attacks on his wife and the misery he put her through warrants a just punishment.

A Guidelines sentence will reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence. A

sentence at the high end of the Guidelines range will also assist in ensuring the goals of fair and uniform sentencing. The U.S. Sentencing Guidelines are designed to lend consistency and fairness to sentencing and are "the product of careful study based upon extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46-47 (2007). Thus, a sentence at the high end of the guidelines range will serve to minimize unwarranted disparities between defendant and similarly situated defendants.

## V. SUPERVISED RELEASE

The government has no objections or additions to the conditions of supervised release in the PSR. A term of supervised release is appropriate if the court imposes a sentence of imprisonment of at least one year. *See* § 5D1.1(a)(2). The government agrees with Probation that the maximum supervised release term of three years should be imposed in this case. The nature of this offense and the history and characteristics of the defendant outlined above make a three-year term of supervision appropriate. *See* 18 U.S.C. § 3583(c).

## Conclusion

For these reasons, the government respectfully requests that the Court impose a sentence at the high end of the applicable Guidelines as well as a three-year term of supervised release.

                    Respectfully submitted,

                    JOHN R. LAUSCH, JR.
                    UNITED STATES ATTORNEY

By:   /s/ *Barry Jonas*
        Barry Jonas
        Assistant United States Attorneys
        United States Attorney's Office
        219 S. Dearborn St., 5th Floor
        Chicago, Illinois 60604
        (312) 353-0517

Dated: June 23, 2022